Agnes, Peter W., J.

Introduction

The plaintiffs, the Trustees of Woodburyville Heights Condominium Trust (hereinafter the “Trustees”), have filed this action against the defendants, John Magill and Magill Associates, Inc. (hereinafter and collectively “Magill”), for repair and maintenance costs incurred since 2001 of the common areas of the Woodburyville Heights Condominium (hereinafter “WHC”) complex based upon theories of breach of contract and breach of warranty. Magill developed and built WHC located in Sutton, Massachusetts. The Trustees are seeking damages after their investigation and determination that Magill’s negligence and failure to supervise subcontractors and workers led to the poor quality of the relatively new complex.
The defendants have motioned this court for a protective order striking the plaintiffs’ Mass.RCiv.P. 30(b)(6) deposition subpoena of a defense expert witness. For the reasons set forth below, the motion is allowed.

Background

This action began in 2002. Since that time, discovery has been progressing slowly. In early June 2005, the defendants served the plaintiffs with their Second Supplemental Answer to Plaintiffs Interrogatories wherein the defendants first identified George G. Byl, P.E. (hereinafter “Byl”) of Restructure Company, Inc. as a liability expert. See Defendants’ Motion for a Protective Order, p. 2. In the defendants’ supplemental answer, which is seven and one-half pages in length— single spaced, the subject matter on which Byl is expected to testify, the substance of the facts and opinions to which Byl is expected to testify, and a *722 summary of the grounds for each opinion are offered by Byl. Id. The supplemental answer indicated that Byl reviewed various documents identified on a “List of Document Reviewed” titled “Exhibit A.” Id., citing the Defendants’ Second Supplemental Answer Number 3.
In mid-September 2005, the plaintiffs served Restructure with a Mass.R.Civ.P. 30(b)(6) subpoena, seeking either 1) all excerpts of these documents which contain handwriting by Mr. Byl or any of his assistants and excerpts of these documents on which Mr. Byl specifically relied for his opinion or 2) full and complete copies of twenty-four (24) enumerated documents records identified in “Schedule A.”[1] (Original emphasis.) Id. The defendants objected to the subpoena and informed the plaintiffs that they [the defendants] had directed Restructure to not produce any information requested on “Schedule A.” Id., p. 2-3.
In mid-November 2005, the defendants agreed to produce documents Nos. 21 and 22 from Schedule A.[2] Otherwise, the defendants have objected to the remaining “Schedule A” documents as those which are protected by the attorney-client or work product privilege or information prepared in anticipation of litigation. The defendants also claim that they have either already produced some of the Schedule A items or that the items are public information and thereby equally accessible to the plaintiffs.

Protective Orders: Pertinent Portions ofMass.R.Civ.P. 26(c)

“Upon motion by a party • • • and for good cause shown, the court . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the discovery not be had; (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain matters not be inquired into, or that the scope of the discovery be limited to certain matters; ... (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way ...”

Expert Discovery: Pertinent Portions ofMass.R.Civ.P. 26(b)(4)

“Discovery of facts known and opinions held by experts, otherwise discoverable . . . and acquired or developed in anticipation of litigation or for trial, may be obtained only as follows: (A)(1) A party may through interrogatories require any other party to identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion ...”

Discussion

It is well settled that “the conduct and scope of discovery and protective orders are issues within the sound discretion of the motion or trial judge,” Hanover Ins. Co. v. Sutton, 46 Mass.App.Ct. 153, 159 (1999), as is “the admission of evidence, particularly expert testimony.” Beaupre v. Cliff Smith & Assocs., 50 Mass.App.Ct. 480, 485 (2000). “Where good cause is shown, the Court ‘may make any order which justice requires to protect a party . . . from undue burden or expense.’ ” Stanley Realty Holdings v. Watertown Zoning Bd. of Appeals, 18 Mass. L. Rptr. 468 (Mass.Super.Ct. 2004), quoting Mass.R.Civ.P. 26(c).
For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted. See Beckman Indus., v. International Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992) (holding that “broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test”); see also San Jose Mercury News, Inc., 187 F.3d 1096, 1102 (9th Cir. 1999) (holding that to gain a protective order the party must make “particularized showing of good cause with respect to any individual document”). Additionally, in some instances, if a court were to find that a particularized harm would result from disclosure of information to the public,[3] then it balances the public and private interests to decide whether a protective order is necessary. See Glenmede Trust Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995) (citing factors).[4]
It is clear that Byl is an expert who was hired in anticipation of litigation. He is a liability expert; by design, he is in the arsenal of weapons employed to defend this action. The plaintiffs have been allowed generous access to Byl via interrogatories as guided by Mass.R.Civ.P. 26(b)(4). They may have access to each expert’s name, the subject matter on which the expert is expected to testify, and the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion according to the rule. See Mass.R.Civ.P. 26(b). It is only when the expert’s answers are inadequate, incomplete, inconsistent, or when the discovering party is unable to obtain equivalent information through other means, that a court should permit a deposition of an expert witness to be taken. Denzer v. Barck, 18 Mass. L. Rptr. 709, *2 (Mass.Super.Ct. 2005), quoting Lozoraitis v. Lachman, 16 Mass. L. Rptr. 809, *2 (Mass.Super.Ct. 2003) (holding, after review of the more liberal Fed.R.Civ.P. 26(b)(4), that the Massachusetts Rule is more restrictive with respect to allowance of expert depositions).
The moving papers included seven and one-half pages which are responsive to the interrogatory regarding experts.[5] The twenty-eight (28) separate paragraphs appear to be in compliance with the rule insofar as they outline what Byl will testify about and *723 that these opinions are based upon specifically, various specific building codes and industry standards and generally, his background, education, and training as a professional engineer. The answers do not appear inadequate, incomplete, or inconsistent; nor have the plaintiffs indicated that they are unable to obtain equivalent information through other means.
Permitting a deposition of Byl would be not only contrary to the factual averments made by the plaintiffs in response to the defendant’s motion for a protective order but also to the public policy considerations underlying the rule itself. Extensive discovery, such as that proposed by the plaintiffs in their attempt to obtain various documents and through a notice for deposition, is costly. As this court has already noted, “if taking depositions of an adverse parly’s experts became a matter of routine practice, it could lead to problems that could produce additional delays and costs in an already slow and expensive civil litigation system including the potential need for parties to return to court for protective orders, and the potential for further discovery requests as a result of issues that arise during the deposition.” Lozoraitis, 16 Mass. L. Rptr. at 809, *2.
It is unfair to all parties, when experts comprise a portion of the action, to require the opposing party to submit its expert to exhaustive scrutiny. The rule does not call for a party to show all of its cards when disclosing its intentions to use expert testimony at trial but it certainly comes close. The rule, if respected and complied with by the party answering the interrogatory — here, the defendant, allows for a great deal of insight as to the upcoming testimony.

Conclusion

Magill has successfully shown how it would suffer harm if it is requested to produce particular documents protected by the attorney-client and the work product privileges and information prepared in anticipation of litigation. As discussed above, the public policy arguments favor the allowance of a protective order in this case as well.
Therefore, in this case, good cause has been shown to justify the issuance of a protective order.

ORDER

For the foregoing reasons, the defendants’ request for a protective order is ALLOWED.

 The list of documents, originally titled “Exhibit A” in the defendants’ supplemental answers, was pared down to become the plaintiffs’ “Schedule A.”

 No. 21: Limited Warranty, dated 6/30/98 and No. 22: Numerous photographs collected during four inspections of the property. The plaintiffs requested that these two documents be “full and complete copies” of the original.

 This court recognizes that documentation exchanged during discovery does not automatically become part of the court record. However, on a motion for summary judgment, the adverse party would be entitled to incorporate sensitive or private information in its moving papers, which do become part of the public record.

 “[W]hether disclosure will violate any privacy interests; (2) whether the information is being sought for a legitimate purpose or for improper purpose; (3) whether disclosure of the information will cause a party- embarrassment; (4] whether confidentiality is being sought over information important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting [sic] from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.”

 The interrogatory reads, “[identify each expert, or opinion witness the defendant will call by stating his or her name, address, employment position, and a summary of his or her qualifications as an expert; state the subject matter on which he or she is expected to testily, the substance of all facts and opinions to which he or she is expected to testify, and a summary of the grounds for each opinion he or she will give.”